UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

WINDMILL RESERVE CORP.,[1]

       Debtor.

_____/

Case No. 16-20986-RBR
Chapter 11

**MOTION FOR ORDER (I) AUTHORIZING THE DEBTOR'S
(A) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND
(B) TO GRANT ADEQUATE PROTECTION IN CONNECTION THEREWITH
<u>PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363</u>**

Windmill Reserve Corp., the debtor and debtor-in-possession (the "Debtor"), by and through undersigned proposed counsel,[2] pursuant to 11 U.S.C. §§ 361, 362 and 363, Bankruptcy Rule 4001(b), and Local Rule 9013(F) and (G), moves this Court (the "Motion") to enter an order (the "Cash Collateral Order"), substantially in the form attached hereto as **<u>Exhibit A</u>**, pursuant to sections 105, 361, 362, 363, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 4001-2 of the Local Rules of United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), and this Court's Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing (the "Guidelines"), authorizing the Debtor to use cash collateral, and respectfully represents as follows:

---

[1] The mailing address and last four digits of the Debtor's federal tax identification number are: c/o Philip J. Von Kahle, as Curator, Michael Moecker & Associates, Inc., 1883 Marina Mile Blvd., Ste. 106, Fort Lauderdale, FL 33315 (2744).

[2] Simultaneously with the filing of this Motion, the Debtor is filing its *Application by Debtor to Employ Berger Singerman LLP as Counsel to the Debtor-in-Possession*.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 361, 362 363 and 507(b) of the Bankruptcy Code, Bankruptcy Rule 4001, Local Rule 4001-2 and the Guidelines.

## Disclosures Under Bankruptcy Rules, Local Rules and Guidelines

4.      The following disclosures are provided in conformance with the requirements of Bankruptcy Rule 4001(b), Local Rules 4001-2, 9013-1(F) and (G), and the Guidelines:

a.      Cash Collateral:  Any collateral constituting "Cash Collateral", as such term is defined in section 363 of the Bankruptcy Code. The following parties have or may claim  interests in cash collateral: Broward County Tax Collector, Regions Bank, Pension Benefit Guaranty Corporation (the "PBGC"), Tracy Posner Ward and Robert Castellano Building and Design, LLC.

b.      Party With an Interest in Cash Collateral: The largest claim of the foregoing entities is held by the PBGC; it has been liquidated at $32,250,000, with a secured component of not less than $18,000,000; provided, however, that under the PBGC Settlement Agreement (as defined herein), the PBGC's maximum recovery from the sale of real property owned by the Probate Estate and the VP Entities (as defined) is limited to $18 million, with its secured claim based upon Lien Notices (as defined herein) under Internal Revenue Code § 412(n) and/or 430(k). In the *Stipulation and Agreed Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection, Nunc Pro Tunc to the Petition Date* attached hereto as **Exhibit A**, and incorporated herein (the "Stipulation"), the Debtor stipulates, among other things, that the PBGC is the holder of an allowed secured claim against the Debtor and its estate of at least $18 million, and the holder of an allowed claim against the Debtor and its estate in the

aggregate amount of $32,500,000, that the Debtor is justly and lawfully and jointly and severally indebted and liable together with the other VP Entities without defense, counterclaim or offset of any kind, for the PBGC's Allowed Claim (as defined), and that that the PBGC's Allowed Secured Claim is a valid, properly perfected, and duly enforceable lien of at least $18,000,000, including interest that continues to accrue (junior to the liens of the Broward County Tax Collector and Regions Bank of Gainesville) on all of the Debtor's assets including the Real Property (as defined). Notwithstanding anything in the Stipulation to the contrary, no Collateral, Cash Collateral or proceeds thereof is authorized to be used by the Debtor to prosecute any proceeding, to object to, challenge or contest in any manner, or to raise any defenses to, as assert any right of recoupment or set-off with respect to the validity, perfection, extent, priority allowance or enforceability of the PBGC Obligations of the PBGC Lien (as defined) or to prosecute any action for preferences, fraudulent transfers or conveyances, equitable subordination, disallowance or other claims or causes of action against PBGC, or any of its property interests, including without limitation, with respect to the PBGC Secured Obligations or the PBGC Lien. The Broward County Tax Collector has a first priority lien in the approximate amount of $578,464.25. Regions Bank has a second priority lien in the approximate amount of $820,000. The PBGC's lien, discussed above, has third priority. Tracy Posner Ward has a fourth priority lien in the approximate amount of $5,817,054 which amount has been liquidated by virtue of a final judgment entered by the Miami-Dade Circuit Court on December 26, 2013. Robert Castellano Building and Design, LLC asserts a secured claim that would, if sustained, be a fifth priority lien; however, the Debtor has scheduled this claim as disputed and unliquidated.

c.     <u>Proposed Use of Cash Collateral</u>:  The Debtor proposes to use cash collateral for the principal purpose of facilitating a sale(s) of the Real Property (as defined), and to pay administration of the estate, with the Net Sale Proceeds (as defined) to be split 60 – 40 for the PBGC and the Debtor, respectively, as set forth in more detail below.

d.     <u>Termination Date</u>:  The Debtor will continue to use any cash on hand and

any cash generated from the sale of the Real Property, subject to the split discussed in the preceding sub-paragraph, until such time as the occurrence of an Event of Default (as defined), including entry of an order (i) dismissing the Case (as defined herein), (ii) converting the Case to a case under chapter 7, (iii) directing the appointment of a trustee or an examiner, or (iv) entry of entry of an order disallowing, subordinating or recharacterizing in any way the PBGC Allowed Claim or in any way voiding, avoiding, limiting or otherwise adversely affecting the PBGC Lien or any security interest created by this Order or any payment pursuant thereto or hereto.

e.      Adequate Protection:  As adequate protection of PBGC's interests in the Collateral (including, but not limited to, cash collateral), the PBGC shall receive, (i) until the consummation of a sale of Collateral, the Debtor shall maintain all necessary insurance coverage as may currently be in effect and obtain such additional insurance in an amount as is appropriate with respect to the value of the Collateral;  and (ii) the Debtor shall promptly provide to PBGC such reports and access, as may be reasonably requested by PBGC, to the Collateral, and the Debtor's books and records and personnel.  The Debtor shall also provide to PBGC any and all reports which it provides to any lender or other third-party (including, without limitation, Regions Bank) in accordance with applicable agreements, at such time and in such form consistent with the requirements of such agreements.

f.      Cash Collateral Order:  The proposed form of Cash Collateral Order is attached as **Exhibit A**.[3]

---

[3] Given the agreement with the PBGC regarding the sharing of the Net Sale Proceeds disclosed in ¶4(c), above, and ¶35, below, the very limited operations of the Debtor focused on the sale(s) of the Real Property, and the fact that the Debtor has only 1 employee, the Debtor is not attaching a budget to this Motion as contemplated by Section II(C) of the Guidelines.

## BACKGROUND

5.      On the date hereof, the Debtor filed its voluntary petition for relief under title 11, Chapter 11 of the United States Code.

6.      The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee, examiner, or committee has been appointed in this case.

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The Debtor is a Florida corporation that owns and developed the "Windmill Reserve" community in Weston, Florida. "Windmill Reserve" consists of 94 single family home sites, 72 of which have been sold and improved.  The Debtor holds title to 22 lots in the community (the "Real Property").  The Debtor also owns two lots used for mitigation and located in Miramar, Florida.

9.      The Debtor is wholly owned by the Estate of Victor Posner (the "Posner Estate").

10.     Victor Posner passed away on February 11, 2002.

11.     On February 12, 2002, the Posner Estate was established through the filing of a probate petition in the Circuit Court in and for Miami-Dade County, Florida (Case No. 02-595-CP-04) (the "Probate Court").   On the same day, the Probate Court issued Letters of Administration appointing Brenda Nestor ("Brenda") as the personal representative of the Posner Estate.

12.     On March 30, 2015, the Probate Court issued an Order to Show Cause (the "Show Cause Order") directing Brenda to appear and show cause why she should not be removed as the personal representative of the Posner Estate.   On April 30, 2015, following notice and a hearing,

the Probate Court entered an order removing Brenda as personal representative of the Posner Estate (the "Removal Order").

13.    On June 9, 2015, the Probate Court entered an order appointing Philip Von Kahle as curator for the Posner Estate.

14.    On July 27, 2016, Philip Von Kahle was appointed as President of the Debtor.

### REQUESTED RELIEF

15.    The Real Property is encumbered by the following liens:

| Secured Creditor | Priority | Amount of Claim |
| --- | --- | --- |
| Broward County Tax Collector | First | Approx. $578,464.25 |
| Regions Bank | Second | Approx. $820,000 |
| Pension Benefit Guaranty Corporation | Third | $32,250,000[4] |
| Tracy Posner Ward | Fourth | $5,817,054[5] |
| Robert Castellano Building  and Design, LLC | Fifth | Disputed and Unliquidated |

16.    The Debtor commenced this case in order to, *inter alia,* maximize the value of the Real Property through one or more sales.

17.    The proceeds of the sale(s) of the Real Property constitutes the Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code")) of the Pension Benefit Guaranty Corporation (the "PBGC").  By this Motion, the Debtor seeks the entry of an order in the form attached hereto as **Exhibit A** (the

---

[4] The amount of the Pension Benefit Guaranty's claim has been liquidated pursuant to the PBGC Settlement Agreement (as defined in ¶23, below).

[5] The amount of Ms. Posner Ward's claim has been liquidated by virtue of a final judgment entered by the Miami-Dade Circuit Court on December 26, 2013.

"Cash Collateral Order"), authorizing the use of PBGC's "Cash Collateral". The PBGC has consented to the Court's entry of the order attached hereto as **Exhibit A**.

18.     By this Motion, the Debtor seeks a hearing (the "Hearing") on this Motion, to be held no less than fourteen (14) days from service of a notice of hearing on such Hearing, in accordance with Bankruptcy Rule 4001(b)(2) and (3).

## THE PBGC SETTLEMENT AGREEMENT

19.     The Probate Estate consists of Posner's substantial direct and indirect holdings in multiple entities, including the Debtor.  Brenda took charge of Posner's interests in all of the entities (collectively, the "VP Entities").  Brenda, as self-appointed officer and director, continued to exercise sole dominion and control over the Debtor and its assets.

20.     At the time of Posner's death, certain entities owned by the Probate Estate maintained and administered nine defined benefit pension plans.  Five of these pension plans were sponsored by NVF Company ("NVF").  On April 15, 2009, NVF filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Delaware, Case No. 09-11293.  Thereafter, the Probate Estate consolidated all nine pension plans effective December 31, 2008, and the Probate Estate was named as sponsor, resulting in the APL/NVF Consolidated Pension Plan (the "Pension Plan").

21.     On or about April 5, 2013, the Probate Estate provided PBGC a Form 200, Notice of Failure to Make Required Contributions, acknowledging that the Estate had failed to make the first quarterly required contribution to the Pension Plan for the 2011 plan year of $559,348.  The Form 200 also indicated that the Probate Estate had failed to make required contributions for the 2010 plan year, which caused the amount of unpaid required contributions to exceed $1 million. PBGC also received a copy of the Pension Plan's January 1, 2012 actuarial valuation report.

This report stated that, as of January 1, 2012, accumulated unpaid required contributions for the Pension Plan totaled approximately $8 million, plus accrued interest.

22.     On or about July 25, 2013, PBGC filed Notices of Federal Lien under IRC § 412(n) and/or § 430(k) (the "Lien Notices") with certain filing offices in the amount of $10,128,398, including accrued interest.  By doing so, the PBGC perfected the federal statutory lien (the "PBGC Lien") that arose as a matter of law in favor of the Pension Plan for missed minimum contributions to the Pension Plan against all (i) personal property of the members of the Probate Estate's controlled group then known to PBGC, *i.e.*, the VP Entities identified on the April 5, 2013 Form 200, including the Debtor, and (ii) against all real and personal property of such VP Entities in the jurisdictions upon which the notices were filed.  PBGC has the sole authority to enforce the PBGC Lien on behalf of the Pension Plan.  Because of the Probate Estate's failure to make additional contributions due by October 15, 2013, January 15, 2014, April 15, 2014 and July 15, 2014, PBGC sent to certain filing offices additional Lien Notices against the Estate and certain of the VP Entities, including Windmill Reserve.

23.     On October 27, 2015, Von Kahle, as Curator for the Probate Estate, and PBGC executed a *Settlement Agreement Between Debtor and Pension Benefit Guaranty Corporation Regarding Termination of APL/NVF Consolidated Pension Plans and Obligations Owed To PBGC* (the "PBGC Settlement Agreement").

24.     On May 23, 2016, the Probate Court entered an order following notice and an evidentiary hearing (a) overruling Brenda's objection to the PBGC Settlement Agreement, and (b) approving the PBGC Settlement Agreement.

25.     The PBGC Settlement Agreement, *inter alia*, resulted in the termination of the Pension Plans, compromised and liquidated the PBGC's secured claim against the Probate Estate, and provided a carve-out for the benefit of the Probate Estate from the proceeds of the

sale of the Collateral (as defined in the PBGC Settlement Agreement), including the Realty Collateral.

26.    As of the Petition Date, the principal balance due to PBGC under the PBGC Settlement Agreement is at least $18,000,000, plus interest, fees, costs and expenses.

**BASIS FOR RELIEF**

27.    A critical need exists for the Debtor to be permitted to use the Cash Collateral to continue to use commercially reasonable efforts to market and sell the Real Property on commercially reasonable terms and generally conduct its business affairs, including principally a sale(s) of the Real Property, so as to avoid immediate and irreparable harm to its estate and the value of its assets.

28.    Absent the use of the Cash Collateral, the Debtor's estate would not have the necessary funds to preserve and maximize the value of its assets through the sale(s) of the Real Property. Without the use of Cash Collateral, the Debtor will have no ability to effectuate the sale(s) of the Real Property which would substantially impair its ability to realize value for the benefit of its creditors. Allowing the use of the Cash Collateral, therefore, is in the best interests of the Debtor's estate and creditors. **Other than the stipulation to the liens of the PBGC, Broward County, Regions Bank, and Tracy Posner Ward, the filing of this Motion does not constitute an admission by the Debtor that the other entities identified in paragraph 15, above, hold valid liens on the Debtor's assets, including the Real Property of any cash or cash equivalents.** The Debtor reserves the right to context the validity, priority, and extent of the alleged liens and claims of  Robert Castellano Building  and Design, LLC and any other entity which may assert a secured claim or lien on any assets of the Debtor.  The use of the Cash Collateral sought herein has been negotiated in good faith and at arm's length.  The terms of the proposed use of the Cash Collateral are fair and reasonable under the circumstances, reflect the

Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

## ARGUMENT AND CITATION OF AUTHORITY

29.     Bankruptcy Code section 363(c)(2), which governs the postpetition use of cash collateral by a debtor in possession, provides as follows:

> (2)     The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless —
>
> (A)     each entity that has an interest in such cash collateral consents; or
>
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2)(A), (B).

30.     The Debtor seeks authorization to use cash collateral pursuant to 11 U.S.C. § 363(c)(2)(B).  The cash collateral proposed to be used by the Debtor may include any cash-on-hand and cash to be generated from the continued operations of the Debtors' businesses, including principally the sale(s) of the Real Property. If the Debtor is unable to use cash collateral or obtain such additional liquidity, it will not be able to meet essential obligations or facilitate a sale(s) of the Real Property. Accordingly, the Debtor and its creditors face a substantial risk of immediate and irreparable harm if the relief sought herein is not permitted.

31.     Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief.  11 U.S.C. § 361(1)-(3).  What constitutes adequate protection must be decided on a case-by-case basis.  See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-12397 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985); In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

32.     The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("[t]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value of which he bargained prebankruptcy") (internal citations omitted); see also In re Carbone Companies, Inc., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("[t]he test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral"). A bankruptcy court can grant the use of cash collateral in order to preserve or enhance a debtor's ability to remain a going-concern. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984).

33.     In exchange for the use of cash collateral and other transactions contemplated hereby, the Debtor proposes, as adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code, as applicable, to (i) maintain, for the PBGC's benefit (and the benefit of the other entities identified in paragraph 15, above), until the consummation of a sale(s) of the Collateral (as defined in the Stipulation), including the Real Property, all necessary insurance coverage as may be currently in effect and obtain such additional insurance in an amount as is appropriate with respect to the value of the Collateral, and (ii) promptly provide to the PBGC such reports and access, as may be reasonably requested by PBGC, to the Collateral, and the Debtor's books and records and personnel.  The Debtor shall also provide to PBGC any and all reports which it provides to any lender or other third-party (including, without limitation, Regions Bank) in accordance with applicable agreements, at such time and in such form consistent with the requirements of such agreements. **The Debtor stipulates, among other things, that the PBGC is the holder of an allowed secured claim against the Debtor and its estate of at least $18 Million, and the holder of an allowed claim against the Debtor and its**

estate in the aggregate amount of $32,500,000, that the Debtor is justly and lawfully and jointly and severally indebted and liable together with the other VP Entities without defense, counterclaim or offset of any kind, for the PBGC's Allowed Claim (as defined), and that that the PBGC's Allowed Secured Claim is a valid, properly perfected, and duly enforceable lien of at least $18,000,000, including interest that continues to accrue (junior to the valid liens of the Broward County Tax Collector and Regions Bank of Gainesville) on all of the Debtor's assets including the Real Property (as defined). Notwithstanding anything in the Stipulation to the contrary, no Collateral, Cash Collateral or proceeds thereof is authorized to be used by the Debtor to prosecute any proceeding, to object to, challenge or contest in any manner, or to raise any defenses to, as assert any right of recoupment or set-off with respect to the validity, perfection, extent, priority allowance or enforceability of the PBGC Obligations of the PBGC Lien (as defined) or to prosecute any action for preferences, fraudulent transfers or conveyances, equitable subordination, disallowance or other claims or causes of action against PBGC, or any of its property interests, including without limitation, with respect to the PBGC Secured Obligations or the PBGC Lien.

35.    The Debtor submits that the foregoing protections, and the fact that the use of cash collateral will enable the Debtor to preserve value by, among other things, conducting a sale(s) of the Real Property, 60% of the proceeds of the Net Sale Proceeds from each sale which shall go to the PBGC, should adequately protect the PBGC from any diminution in the value of any interests in its prepetition collateral, including any cash collateral.

36.    The Debtor believes that the relief sought in this Motion is in the best interests of

the Debtor and its estate and creditors and that the implementation of the Cash Collateral Order will allow for the continued operation of the Debtor's existing business, including principally a sale(s) of the Real Property. The Debtor further believes that entry of the Stipulation is in the best interests of the Debtor and its estate and creditors

**WHEREFORE**, the Debtor respectfully requests that the Court: (i) Grant this Motion; (ii) enter the Cash Collateral Order in the form attached hereto as **Exhibit A**; and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

BERGER SINGERMAN LLP
Prospective Counsel for the Debtor
1450 Brickell Ave., Suite 1900
Miami, Florida  33131
Telephone No. (305) 755-9500
Facsimile No.   (305) 714-4340

By:    /s/ Paul Steven Singerman
     Paul Steven Singerman
     Florida Bar No. 378860
     singerman@bergersingerman.com
     Jordi Guso
     Florida Bar No. 863580
     jguso@bergersingerman.com

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

                                               Case No.

WINDMILL RESERVE CORP.,            Chapter 11

       Debtor.
_____/

**STIPULATION AND AGREED ORDER (I) AUTHORIZING
USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE
PROTECTION, NUNC PRO TUNC TO THE PETITION DATE**

       THIS MATTER came before the Court on August__, 2016 at ____ p.m. upon the *Motion*

*Seeking Entry of Order Authorizing Use of Cash Collateral and Granting Adequate Protection*

ECF No. ____ (the "Cash Collateral Motion").   Pursuant to the Cash Collateral Motion,

Windmill Reserve Corp., as debtor and debtor-in-possession ("Debtor" or "Windmill Reserve")

seeks approval of this Stipulation and Agreed Order (I) Authorizing Use of Cash Collateral and

(II) Granting Adequate Protection (the "Order") between the Debtor and Pension Benefit

Guaranty Corporation ("PBGC"), pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001. This

Order reflects the parties' agreement regarding the use of PBGC's "cash collateral" (as defined in 11 U.S.C. § 363) (the "Cash Collateral").

The PBGC and the Debtor agree and stipulate as follows:

1.      On _____ (the "Petition Date"), the Debtor filed its voluntary petition for relief under title 11, Chapter 11 of the United States Code (this "Case").

2.      The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.  No trustee, examiner, or committee has been appointed in this Case.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The Debtor is a Florida corporation that owns and developed the "Windmill Reserve" community in Weston, FL. "Windmill Reserve" consists of 94 single-family home sites, 72 of which have been sold and improved.  The Debtor holds title to 22 lots in the community.  The Debtor also owns two lots used for environmental mitigation and located in Miramar, Florida (such two lots, collectively with such 22 lots in "Windmill Reserve", the "Real Property" or "Realty Collateral"; the Real Property, collectively with all personal property of the Debtor, the "Collateral").

5.      Victor Posner ("Posner"), an entrepreneur and corporate raider, incorporated the Debtor, and until the time of his death, was its sole shareholder.

6.      On February 11, 2002, Posner died at the age of 83.

2

7.    On February 12, 2002, the Estate of Victor Posner (the "Probate Estate") was established through the filing of a probate petition in the Circuit Court in and for Miami-Dade County, Florida (Case No. 02-595-CP-04) (the "Probate Court").

8.    On February 12, 2002, the Probate Court issued Letters of Administration appointing Brenda Nestor ("Brenda") as the personal representative of the Probate Estate.

9.    The Probate Estate consists of Posner's substantial direct and indirect holdings in multiple entities, including the Debtor.  Brenda took charge of Posner's interests in all of the entities (collectively, the "VP Entities").

10.    Brenda, as self-appointed officer and director, continued to exercise sole dominion and control over Windmill Reserve and its assets.

11.    At the time of Posner's death, certain entities owned by the Probate Estate maintained and administered nine defined benefit pension plans.  Five of these pension plans were sponsored by NVF Company ("NVF").  On April 15, 2009, NVF filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Delaware, case no. 09-11293.  Thereafter, the Probate Estate consolidated all nine pension plans effective December 31, 2008, and the Probate Estate was named as sponsor, resulting in the APL/NVF Consolidated Pension Plan (the "Pension Plan").

12.    On or about April 5, 2013, the Probate Estate provided PBGC a Form 200, Notice of Failure to Make Required Contributions, acknowledging that the Estate had failed to make the first quarterly required contribution to the Pension Plan for the 2011 plan year of $559,348.  The Form 200 also indicated that the Probate Estate had failed to make required contributions for the 2010 plan year, which caused the amount of unpaid required contributions to exceed $1 million.  PBGC also received a copy of the Pension Plan's January 1, 2012 actuarial valuation report.

This report stated that, as of January 1, 2012, accumulated unpaid required contributions for the Pension Plan totaled approximately $8 million, plus accrued interest.

13.     On or about July 25, 2013, PBGC filed Notices of Federal Lien under IRC § 412(n) and/or § 430(k) ("Lien Notices") with certain filing offices in the amount of $10,128,398, including accrued interest.  By doing so, PBGC perfected the federal statutory lien (the "PBGC Lien") that arose as a matter of law in favor of the Pension Plan for missed minimum contributions to the Pension Plan against all (i) personal property of the members of the Probate Estate's controlled group then known to PBGC, i.e., the VP Entities identified on the April 5, 2013 Form 200, including the Debtor, and, (ii) against all real and personal property of such VP Entities in the jurisdictions upon which the notices were filed.  PBGC has the sole authority to enforce the PBGC Lien on behalf of the Pension Plan.  Because of the Probate Estate's failure to make additional contributions due by October 15, 2013, January 15, 2014, April 15, 2014 and July 15, 2014, PBGC sent to certain filing offices additional Lien Notices against the Estate and certain of the VP Entities, including Windmill Reserve.

14.     On March 30, 2015, the Probate Court issued an Order To Show Cause directing Brenda to appear and show cause why she should not be removed as the personal representative of the Probate Estate.

15.     On April 30, 2015, following notice and a hearing, the Probate Court entered an order removing Brenda as personal representative of the Probate Estate (the "Removal Order"). A copy of the Removal Order is attached as Exhibit 1.

16.     Brenda requested a stay of the Removal Order.  The Probate Court denied her request for a stay.

4

17.     On June 9, 2015, the Probate Court entered an order appointing Phillip Von Kahle as Curator for the Probate Estate.  A copy of the order of appointment is attached as Exhibit 2.

18.     On June 25, 2015, Brenda appealed the Removal Order to the Third District Court of Appeal (Case No. 3D15-1453). Brenda also requested a stay of the Removal Order; however, her request was denied by the Third District Court of Appeal by Order dated July 2, 2015.

19.     On April 6, 2016, the Third District Court of Appeal affirmed the Removal Order by a p*er curiam* opinion.  The Removal Order is now final and non-appealable.

20.     On October 27, 2015, Von Kahle, as Curator for the Probate Estate, and PBGC executed a *Settlement Agreement Between Debtor and Pension Benefit Guaranty Corporation ("PBGC") Regarding Termination of APL/NVF Consolidated Pension Plans and Obligations Owed To PBGC* (the "PBGC Settlement Agreement").

21.     On May 23, 2016, the Probate Court entered an order following notice and an evidentiary hearing (a) overruling Brenda's objection to the PBGC Settlement Agreement and (b) approving the PBGC Settlement Agreement.

22.     The PBGC Settlement Agreement, *inter alia*, resulted in the termination of the Pension Plans, compromised and liquidated the PBGC's secured claim against the Probate Estate, and provided a carve-out for the benefit of the Probate Estate from the proceeds of the sale of the Collateral (as defined in the PBGC Settlement Agreement), including the Realty Collateral.

23.     On July 26, 2016, Von Kahle, not individually but solely in his capacity as the Debtor of the Probate Estate, voted the Probate Estate's shares in Windmill Reserve to (a) remove Brenda as the president and sole director of the Debtor, and (b) remove all other officers of the Debtor.

24. Von Kahle, not individually but solely as Curator of the Probate Estate, appointed himself as sole director and president of the Debtor.

25. The Debtor commenced this Case to maximize the value of its assets (all of which are encumbered by the perfected PBGC Lien), advance an orderly sale of substantially all of its assets, prosecute litigation claims and pay allowed claims in accordance with the priorities established by the Bankruptcy Code and this Order.

26. The Real Property is encumbered by the following liens, including the putative lien asserted by Robert Castellano Building and Design, LLC:

| Secured Creditor | Priority | Amount of Claim |
|---|---|---|
| Broward County Tax Collector | First | Approx. $578,464.25 |
| Regions Bank | Second | Approx. $820,000 |
| Pension Benefit Guaranty Corporation, on behalf of the Pension Plan | Third | Approx. $20,000,000[1] |
| Tracy Posner Ward | Fourth | $5,817,054[2] |
| Robert Castellano Building and Design, LLC | Fifth | Disputed and Unliquidated |

27. The Debtor intends to sell the Real Property pursuant to Sections 363(b) and (f) of the Bankruptcy Code after notice and a hearing. The proceeds of the sale(s) of the Real Property constitute the Cash Collateral of the PBGC.

---

[1] The Pension Benefit Guaranty Corporation's ("PBGC") secured claim is at least $18,000,000, and PBGC's total claim has been liquidated in the amount of $35,250,000, pursuant to the PBGC Settlement Agreement. Under the PBGC Settlement Agreement, PBGC"s maximum recovery from the sale of real estate owned by the Probate Estate and the VP Entities is limited to $18,000,000.

[2] The amount of Ms. Posner Ward's claim has been liquidated by virtue of a final judgment entered by the Miami-Dade Circuit Court on December 26, 2013.

6

28.    PBGC consents to (a) the allocation of the net proceeds of sale of the Real Property, and (b) the use of Cash Collateral, each under the terms and conditions set forth herein.

Based on the foregoing stipulations, the statements of counsel on the record, and the entire record before the Court in this case, the Court,

**ORDERS, ADJUDGES AND DECREES** as follows:

A.    The Cash Collateral Motion is **GRANTED** and the parties' stipulations herein are **APPROVED.**

B.    The Debtor stipulates and acknowledges that the PBGC is the holder of an allowed secured claim against the Debtor and its estate (the "Bankruptcy Estate") of at least $18,000,000.

C.    The Debtor stipulates and acknowledges that PBGC is the holder of an allowed claim against against the Debtor and the Bankruptcy Estate in the aggregate amount of $35,250,000 (the "PBGC Allowed Claim")[3], and that it is justly and lawfully and jointly and severally indebted and liable (together with the other VP Entities), without defense, counterclaim or offset of any kind, for the PBGC Allowed Claim.

D.    The PBGC Allowed Claim is secured by the PBGC Lien, which is a valid, properly perfected, and duly enforceable lien of at least $18,000,000, including interest that continues to accrue, (junior to the liens of the Broward County Tax Collector and Regions Bank of Gainesville) on all of the Debtor's assets including the Real Property.

---

[3] The Debtor acknowledges that the PBGC will also receive distributions on account of its claims against the Debtor and other VP Entities from other VP Entities and/or the Probate Estate and that such distributions shall be credited against the PBGC Allowed Claim.

E.      The Debtor shall use commercially reasonable efforts to market and sell the Real Property on commercially reasonable terms.  From the proceeds of each sale, the Debtor shall pay at closing (i) usual and customary costs and expenses of the sale (including commissions), (ii) accrued and unpaid ad valorem taxes, and (iii) the release price provided for in the loan documents executed and delivered by the Debtor to Regions Bank.  The remaining proceeds from each sale ("Net Sale Proceeds") shall be allocated and shared as follows: the PBGC shall at closing receive directly 60% of the Net Sale Proceeds from each sale (the "PBGC Fund"), and the Debtor shall retain the remaining 40% of the Net Sale Proceeds for the benefit of the Bankruptcy Estate and its administrative expense and unsecured creditors.  The PBGC agrees that in respect of the PBGC Allowed Claim, it shall not assert any claim against the Realty Collateral except for the PBGC Fund.  PBGC shall hold an allowed unsecured claim of $35,250,000 ("PBGC Allowed Unsecured Claim") without defense, counterclaim, or offset of any kind, against the Debtor and the Bankruptcy Estate against any other asset of the Bankruptcy Estate, to the extent any exist, including but not limited to any litigation proceeds.  The PBGC Allowed Claim shall be reduced by any amounts received by PBGC from any PBGC Real Estate Lien Payment and PBGC/Evans Payments, as those terms are defined in the PBGC Settlement Agreement.

F.      So long as there has not been an Event of Default (as defined below) under this Order, or if there has been an Event of Default, so long as the Event of Default has been cured within seven business days (the "Cure Period") of the Debtor's receipt of written notice from the PBGC, PBGC hereby consents to the Debtor's use of the Collateral, including the Cash Collateral, from the date of Court approval of this Cash Collateral Stipulation.

G.      As adequate protection of PBGC's interests in the Collateral (including, but not limited to, the Cash Collateral) against any diminution in the value of its interests in the Collateral (including, but not limited to, the Cash Collateral) during its forbearance hereunder, PBGC shall receive the following:

(i)      Until the consummation of a sale of Collateral, the Debtor shall maintain all necessary insurance coverage as may currently be in effect and obtain such additional insurance in an amount as is appropriate with respect to the value of the Collateral;  and

(ii)      The Debtor shall promptly provide to PBGC such reports and access, as may be reasonably requested by PBGC, to the Collateral, and the Debtor's books and records and personnel.  The Debtor shall also provide to PBGC any and all reports which it  provides to any lender or other third-party (including, without limitation, Regions Bank) in accordance with applicable agreements, at such time and in such form consistent with the requirements of such agreements.

(iii)      Claims and Defenses.  Notwithstanding anything in this Agreement to the contrary, no Collateral, Cash Collateral, or proceeds thereof is authorized hereunder to be used by the Debtor to prosecute any proceeding, to object to, challenge or contest in any manner, or to raise any defenses to, or assert any right of recoupment or set-off with respect to the validity, perfection, extent, priority, allowance or enforceability of the PBGC Obligations or the PBGC Lien or to prosecute any action for preferences, fraudulent transfers or conveyances, equitable subordination, disallowance or other claims or causes of action against PBGC, or any of its property interests, including without limitation, with respect to the PBGC Secured Obligations or the PBGC Lien.

9

H.       The occurrence of any of the following events, unless expressly waived in writing by PBGC, shall constitute an "Event of Default" hereunder:

(i)       the failure by the Debtor to observe or perform any of the terms, provisions, conditions, covenants, or obligations contained in this Order, including providing information required by this Order that contains a material misrepresentation or omission;

(ii)      the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior in priority to the PBGC Lien, or (ii) entitled to priority status which is equal or senior to that granted to PBGC or the Pension Plan herein;

(iii)     the institution of any proceeding by the Debtor, any trustee or examiner seeking to challenge the validity of any portion of the PBGC Allowed Claim, or which seeks to void, avoid, limit or otherwise adversely affect the PBGC Lien or any security interest created by this Cash Collateral Stipulation or any payment pursuant thereto or hereto;

(iv)     the reversal, stay, vacatur or modification (without the express prior written consent of PBGC) of this Order;

(v)      the failure by the Debtor to deliver to PBGC any of the documents or other information required to be delivered pursuant to this Cash Collateral Stipulation when due;

(vi)     the appointment of a substitute curator for the Probate Estate or the removal of the curator; or

(vii)    entry of any order (i) dismissing the Case, (ii) converting the Case to a case under chapter 7, (iii) directing the appointment of a trustee or an examiner, or (iv) entry of entry of an order disallowing, subordinating or recharacterizing in any way the PBGC Allowed Claim or in any way voiding, avoiding, limiting or otherwise adversely affecting the PBGC Lien or any security interest created by this Order or any payment pursuant thereto or hereto.

I.       Following the occurrence of an Event of Default (the "Termination Date"), the Debtor's right to use Cash Collateral shall terminate.  Upon the Termination Date, (i) PBGC may file an emergency or expedited motion seeking relief from the automatic stay imposed by Code § 362(a) as to some or all of the Collateral (a "Stay Relief Motion") and obtain a hearing on the Stay Relief Motion with three (3) business days' notice to counsel for the Debtor, counsel for any

10

Committee appointed in the Case (or, prior to the appointment of a Committee, upon Debtor's 20 largest unsecured creditors) and the Office of the U.S. Trustee, (ii) the Debtor irrevocably consents to any Stay Relief Motion being heard on an expedited or emergency basis by the Court, and (iii) at any hearing on a Stay Relief Motion, the only issue to be decided by the Court shall be whether an Event of Default has occurred and exists. The PBGC Lien and any replacement liens granted PBGC by this Order, shall be junior and subordinate to (i) the fees and costs due to the Clerk of the Court; (ii) the fees imposed by the United States Trustee pursuant to 28 USC Section 1960; and (iii) the fees and costs of the Debtor's professionals incurred prior to the Termination Date (as awarded by the Court following application and a hearing), and (iv) up to $75,000 in fees and costs incurred by the Debtor's professionals following the Termination Date, as same may be awarded by the Court after an application and a hearing.

J.      Any creditor or party in interest (including any committee appointed in the Case) shall have 60 days from the date of this Order to file a written objection to the stipulations made by the Debtor in this Order, including to the amount of the PBGC Allowed Claim or to the validity, priority, extent or perfection of the liens securing the PBGC Allowed Claim.  In the absence of a timely filed objection and an order of the Court entered after notice to PBGC and a hearing sustaining any such objections, the stipulations and representations contained in this Order shall be binding on all creditors and parties in interest.

K.      The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (i) confirming any chapter 11 plan, (ii) converting the Case to a case under chapter 7 of the Code, (iii) dismissing any Case, or (iv) withdrawing of the reference of the Case from this Court.

11

L.    This order shall be binding on the parties, their successors and assigns, including any subsequently appointed trustee in the Case, and as provided in Paragraph J above, all creditors and other parties in interest.

#    #    #

Submitted by:
Paul Steven Singerman, Esq.
singerman@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

*(Paul Steven Singerman is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of the entry of the order.)*

12

# EXHIBIT 1

FILED FOR RECORD

2015 APR 30 PM 3: 31

CLERK, CIRCUIT & COUNTY CT.
DADE COUNTY, FLA.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

PROBATE DIVISION

| | |
|---|---|
| IN RE:  ESTATE OF VICTOR POSNER | CASE NO.:  02-595-CP-02/DIV. 04 |
| KELLY POSNER-GERSTENHABER<br>JARRETT POSNER and SEAN POSNER,<br>   Petitioners,<br>vs.<br>BRENDA NESTOR, as Personal Representative<br>of the Estate of Victor Posner | CASE NO.:  02-1027-CP-02/DIV. 04 |
| IN RE:  GUARDIANSHIP OF MELODY<br>LANE WARD | CASE NO.:  02-1369-GD-02/DIV. 04 |
| TRACY P. WARD<br>   Plaintiff<br>vs.<br>BRENDA NESTOR, individually and<br>as Personal Representative of the Estate<br>of VICTOR POSNER, Deceased<br>   Defendant | CASE NO.:  02-2058-CP-02/DIV. 04 |
| IN RE:  IRREVOCABLE TRUST<br>AGREEMENT FOR VICTOR POSNER<br>(TRUST 6) dated September 25, 1968 | CASE NO.:  02-3301-CP-02/DIV. 04 |
| TRACY POSNER WARD, as Guardian of<br>Melody Lane Ward, a minor,<br>   Plaintiff<br>vs.<br>BRENDA NESTOR, MELVIN COLVIN, and<br>BLANCHE LAUNER, as successor trustees of the<br>Victor Posner Trust No. 6 under Irrevocable Trust<br>Agreement dated September 25, 1968, as amended,<br>And individually; GAIL POSNER, as Un-resigned<br>Trustee of the Victor Posner Trust No. 6 under<br>Irrevocable Trust Agreement dated September 25,<br>1968, as amended, and individually; SECURITY<br>MANAGEMENT CORP., a Maryland Corporation;<br>And BRENDA NESTOR & ASSOCIATES, INC.,<br>a Florida Corporation. | |

1

IN RE:  IRREVOCABLE TRUST                  CASE NO.: 02-3701-CP-02/DIV. 04
AGREEMENT FOR VICTOR POSNER
(TRUST NO. 20) DATED 9/15/67

LANCE TROY POSNER,
       Plaintiff
vs.
BRENDA NESTOR CASTELLANO, MELVIN
COLVIN & BLANCHE LAUNER, as trustees
and GAIL POSNER as co-beneficiary
       Defendants

Order Removing Personal Representative and Providing for Appointment of Successor

This cause came before the court on April 2, 2015, and April 17, 2015, for evidentiary hearings providing an opportunity for Brenda Nestor [respondent] in her capacity as personal representative, "and in the fiduciary and corporate roles that she has undertaken in the above referenced cases regarding the assets and liabilities of the estates and trusts and corporate interests of Victor Posner" to show cause why she should *not* be removed and her letters of administration revoked, as ordered *sua sponte* on March 11, 2015.

1. Grounds for the issuance of the order to show cause included the personal representative's failure to comply with a court order dated October 23, 2014, giving a deadline in December, 2014 for the personal representative to file an interim accounting and amended inventory and to provide estate information also previously ordered.

2. A copy of the October 23, 2014 order violated by the respondent's inactions was attached to the March 11, 2015 order to show cause and served by formal notice on the respondent. The order to show cause outlined the basis for contempt proceedings seeking not only removal of the personal representative but sanctions in the form of attorneys' fees and costs for the respondent's failure to obey the court's orders.

2

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

3.      The March 11, 2015 order to show cause included the history of the personal representative's

failure to file an interim accounting, as well as failure to provide  other estate information requested by

interested persons as allowed by Florida Probate Rule 5.341.

4.      While professing through counsel that she has been prepared to act, she has denied

responsibility for  failure to comply with the October 23, 2014 order without plausible explanations.

Florida Statute 733.602(1) provides that a personal representative is...

> ...a fiduciary who shall observe the standards of care applicable
> to trustees.  A personal representative is under a duty to settle
> and distribute the estate of the decedent in accordance with
> the terms of the decedent's will and this code as expeditiously
> and efficiently as is consistent with the best interests of the
> estate. A personal representative shall use the authority
> conferred by this code, the authority in the will, if any, and the
> authority of any order of the court, for the best interests of
> interested persons, including creditors.

5.      In response to the March 11 Order to Show Cause, multiple counsel for the  respondent have

sought   to shift the responsibility for failures  to others while continuing to withhold information from

the court, creditors, beneficiaries and interested persons  as to the financial status of the estate.

Counsel's request for a court order directed to the estate's largest secured creditor, the Pension Benefit

Guaranty Corporation [PBGC] for permission to use proceeds from the sale of estate assets subject to its

multi-million dollar lien for the personal representative's interim accounting is at best untimely.

6.      Florida Statute 733.603 provides that except as otherwise specified by this code or ordered by

the court, [a personal representative] shall proceed expeditiously with the settlement and distribution

of a decedent's estate without adjudication, order or direction of the court.

3

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

7.      Although the personal representative is seeking to appeal matters involving the PBGC, she may

have allowed the PBGD's lien for unpaid pension plan contributions to grow from ten million estimated

in 2013 to over forty million dollars (secured and unsecured) as estimated by the PBGC in its recent

report.

8.      In August, 2014, the U.S. Tax Court in estate proceedings found that "no deficiency or

overpayment existed in connection with the decedent's estate tax issues".    That ruling triggered

(pursuant to a previous court order) the personal representative's duty to file an interim accounting.

9.      The first hearing for the respondent to show cause on  April 2, 2015 gave the respondent and

interested persons otherwise uninformed a chance to hear representatives of  the Pension Benefit

Guaranty Corporation [PBGC], a wholly owned United States government corporation created by Title IV

of the Employee Retirement Income Security Act.

10.     Accruing since 2010 when pension obligations fell short, PBGC has secured and unsecured liens

against the estates and trusts of Victor Posner.  In defense of her failure to file an interim accounting,

the respondent professed that  her "hands were tied" by the PBGC,  making her unable to raise the cash

to pay obligations of the estate of Victor Posner, including the cost of preparing an interim accounting

and an amended inventory for the estate.

11.     The court rejects to the defenses of the respondent to the order to show cause why she should

not be removed as a fiduciary of the estates and trusts of Victor Posner.  If her inability to obtain further

4

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

accounting services estimated to be $300,000 to $500,000, is caused by her failure to pay pension

obligations and to compensate the accountants hired for past work, she herself caused her inability to

perform her duty by not paying compensation to professionals and estate obligations as appropriate

when due.

12.      Because of testimony and documentation showing recent real estate sales with gross amounts

of almost ten million, from which relatively modest amounts were paid for overdue pension payments,

the court rejects as lacking credibility the respondent's defense that she is unable to pay for an

accounting due to the PBGC's liens.

13.      On April l3, 2015, the respondent submitted for *in camera* review and sealing items identified as

court exhibit 2 and 3.   Court exhibit 2 contains four pages, which do not justify the respondent's

continued delay in the preparation and filing of an interim accounting.

14.      As to court exhibit 3, there has been no effort by the respondent to tie hundreds of pages of

what appear to be fiduciary tax returns to her inability to afford the cost of an interim accounting and

updated inventory as ordered.  Court exhibit 3 will be returned to the respondent's counsel unless a

motion to determine confidentiality and to seal is timely provided as required by the court's order

entered April 20, 2015, denying without prejudice requests for *in camera* review.

15.      In its order to show cause, the court requested a report on the issue of "danger to the estate', in

an abundance of caution, as a  failure to obey court order is all that is required to remove a personal

representative.§733.504(3), Fla. Stat.  The court finds that the additional ground of danger to the estate

is established by the totality of the evidence presented in support of

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

the respondent's removal at the hearings on April 2 and April 17, 2015. *See In Re Murphy's Estate,* 336

2d 697, 699 (Fla. 4th DCA 1976).

16.     Accordingly, the court removes the personal representative, and her letters of administration

are hereby revoked.

17.     "The removal of the personal representative shall not exonerate the removed personal

representative or the removed personal representative's surety from any liability." §733.506, Fla. Stat.

The former personal representative shall provide proof forthwith that the bond premiums are current.

18.     The removed personal representative shall file and serve a final accounting of the personal

representative's administration, and comply with Florida Statute 733.508 in order to obtain a discharge,

the bond released, and the surety discharged.

19.     In addition, the removed personal representative shall file pursuant to Fla. Prob. R. 5.065 "a

notice when a civil action has been instituted by or against the personal representative...containing

names of the parties, the style of the court and the case number, the county and state where the

proceedings is pending, the date of commencement of the proceeding, and a brief statement of the

nature of the proceeding".

20.     The removed personal representative shall immediately deliver all estate assets, records,

documents, papers, and other property of or concerning the estate in the personal representative's

possession or control to the "remaining personal representative or the successor fiduciary".

21.     If there is an alternate personal representative named in the will, the removed personal

representative shall advise the court forthwith.

6

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

22.     The beneficiaries and interested persons shall all submit the names of persons willing to assume the responsibilities of the personal representative in her fiduciary capacities, subject to the reservation of jurisdiction as to corporate issues that is contained in the final judgment involving certain matters recently affirmed.

23.     Unless well known in the community for fiduciary accomplishments, a resume of the proposed successor personal representative shall be submitted to the court as soon as possible.

24.     The court finds grounds to assess attorney's fees for failure to provide estate information and reserves ruling as to amounts.

DONE AND ORDERED in chambers, Miami-Dade County, Florida this 30 day of APRIL, 2015.

JUDGE CELESTF HARDEE MUIR
OVERTOWN VILLAGE NORTH
701 N.W. 1ST COURT
MIAMI, FLORIDA 33136
305/349-7105

JUDGE CELESTE HARDEE MUIR

CC:
SCOTT W. LEEDS, 2541 S.W. 27 AVENUE, MIAMI, FL. 33133
EDWARD I. GOLDEN, 17345 S. DIXIE HIGHWAY, PALMETTO BAY, FL. 33157
CANDIS TRUSTY, TWO DATRAN CENTER, 9130 S. DADELAND BLVD., STE. 1225, MIAMI, FL. 33156
ANDREW B. CLUBOK & JENNIFER LEVY, 601 LEXINGTON AVE., NEW YORK, N.Y. 10022
NORMAN A. FLEISCHER, 2101 NW CORPORATE BLVD., STE. 107, BOCA RATON, FL. 33431
MARTY STEINBERG, BILZIN SUMBERG, 1450 BRICKELL AVENUE, STE. 2300, MIAMI, FL. 33131
JOSHUA D. LERNER, 80 SW 8 STREET, #3000, MIAMI, FL. 33130
JOHN H. SCHULTE, 4000 PONCE DE LEON BLVD., STE. 470, CORAL GABLES, FL. 33146

7

CASE NO.: 02-595-CP-02/DIV. 04
CASE NO.: 02-1027-CP-02/DIV. 04
CASE NO.: 02-1369-GD-02/DIV. 04
CASE NO.: 02-2058-CP-02/DIV. 04
CASE NO.: 02-3301-CP-02/DIV. 04 &
CASE NO.: 02-3701-CP-02/DIV. 04

JONATHAN FEUERMAN, 1 S.E. 3 AVE., STE. 2950, MIAMI, FL. 33131
ROBERT BARRAR, 6619 S. DIXIE HIGHWAY, STE. 311, MIAMI, FL. 33143
ALSCHULER GROSSMAN STEIN & KAHN, 1629 26 STREET, SANTA MONICA,
CALIFORNIA 90404
MELODY LANE WARD, 4867 PEDLEY AVE., NORCO, CA. 92860
TRACY WARD, 4867 PEDLEY AVE., NORCO, CA. 92860
DENNIS KLEIN, HUGHES HUBBARD, P.A., 201 S. BISCAYNE BLVD., STE. 2500,
MIAMI, FL. 33131
JOHN C. LUKACS, 2525 PONCE DE LEON BLVD., 4TH FLOOR, MIAMI, FL. 33134
ROBIN KING, 525 OKEECHOBEE BLVD., STE. 1600, WEST PALM BEACH, FL. 33401
PAUL MORRIS, 9350 S. DIXIE HIGHWAY, STE. 1450, MIAMI, FLORIDA 33156

8

# EXHIBIT 2



FILED FOR RECORD
2016 JUN -9 PM 2: 32
CIRCUIT & COUNTY COURTS
DADE COUNTY FLA.
CIVIL #165

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

PROBATE DIVISION

| | |
|---|---|
| IN RE: ESTATE OF: VICTOR POSNER<br>Deceased | CASE NO.: 02-595-CP-02/DIV.04 |
| KELLY POSNER-GERSTENHABER<br>JARRETT POSNER and SEAN POSNER,<br>    Petitioners,<br><br>vs.<br><br>BRENDA NESTOR, as Personal Representative<br>Of the Estate of Victor Posner | CASE NO.: 02-1027-CP-02/DIV.04 |
| IN RE: GUARDIANSHIP OF MELODY<br>LANE WARD | CASE NO.: 02-1369-GD-02/DIV.04 |
| TRACY P. WARD,<br>    Plaintiff<br><br>vs.<br><br>BRENDA NESTOR, Individually and as Personal<br>Representative of the Estate of VICTOR<br>POSNER, Deceased<br>    Defendant | CASE NO.: 02-2058-CP-02/DIV.04 |
| IN RE: IRREVOCABLE TRUST AGREEMENT<br>FOR VICTOR POSNER (TRUST NO. 6) dated,<br>SEPTEM BER 25, 1968 | CASE NO.: 02-3301-CP-02/DIV.04 |
| TRACY POSNER WARD, as Guardian of<br>Melody L. Ward, a minor<br>    Plaintiff<br><br>vs.<br><br>BRENDA NESTOR, MELVIN COLVIN, and<br>BLANCHE LAUNER, as successor trustees of the<br>Victor Posner Trust No. 6 under Irrevocable Trust<br>Agreement dated September 25, 1968, as amended,<br>and Individually; GAIL POSNER, as Un-resigned<br>Trustee of the Victor Posner Trust No. 6 under<br>Irrevocable Trust Agreement dated September 25,<br>1968, as amended, and Individually; SECURITY<br>MANAGEMENT CORP., a Maryland Corporation;<br>and BRENDA NESTOR & ASSOCIATES, INC.,<br>a Florida Corporation. | |

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

IN RE: IRREVOCABLE TRUST                 CASE NO. 02-3701-CP-02/DIV.04
AGREEMENT FOR VICTOR POSNER
(TRUST NO. 20) DATED 9/15/67

LANCE TROY POSNER,
        Plaintiff
vs.
BRENDA NESTOR CASTELLANO, MELVIN
COLVIN & BLANCHE LAUNER, as trustees
and GAIL POSNER as co-beneficiary
        Defendants

Order Appointing Curator Pursuant to Removal of Personal Representative

(Corrected)

THIS CAUSE came before the court for a status conference on June 2, 2015, for the purpose of

appointing a successor personal representative.

1.      On April 30, 2015, the court entered its order removing the personal representative and

providing for an appointment of a successor for the reasons indicated in the order, and the evidence

presented at the hearings on the court's March 2015 order to show cause.

2.      The removed personal representative's failure to observe the standards of care applicable to

trustees . . . and failure to settle and distribute the estate of the decedent (expeditiously) in accordance

with Florida law and the terms of the decedent's will,  resulted in removal for violation of court orders,

as provided in Florida Statute 733.504(3). *See* §733.602(1), Fla. Stat. (2014).  The order removing the

personal representative and revoking her letters of administration is now on appeal.

3.      The court denied a stay of the proceedings at the  June 2, 2015 status conference, after waiver

of the right to advance notice of the hearing on the motion to stay, by counsel for the interested

persons and their clients who attended in person or by phone.

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

4.     Because the court's jurisdiction continues under Florida Rule of Appellate Procedure 9.130(f), the court proceeded to approve a proposed successor fiduciary on June 2, 2015. The conduct of the estate's administration should not be interrupted any longer. Appeal proceedings in probate and guardianship cases "shall be as in civil cases". *See* Fla. App. R. 9.170(a). "In the absence of a stay, during the pendency of a review of a non-final order, the lower tribunal may proceed with all matters, including trial or final hearing, except that the lower tribunal may not render a final order disposing of the cause pending such review absent leave of the court." Fla. R. App. P. 9 130(f).

5.     At the June 2, 2015, the court directed the curator approved by the court to hire counsel and submit his oath and proposed letters of curatorship pursuant to Florida Statute 733.5061. The court's order appointing the curator was entered on June 3, 2015.

6.     The removed personal representative has not provided an updated inventory, or satisfactory interim accounting in thirteen years of the estate's administration. Since the removed personal representative posted a bond, there is no restricted depository to hold the estate's liquid assets, and the administration of the decedent's assets and liabilities has been largely outside the view of the court and interested persons.

7.     The April 30, 2015 order directed the removed personal representative, beneficiaries and interested persons to submit the names of persons willing to assume the responsibilities of the personal representative in her fiduciary capacities and to the extent provided in various settlement agreements approved by the court, her corporate capacities.

8.     The only resumes submitted were for Philip J. von Kahle, chief operating officer of Michael Moecker & Associates, Eric J. Vainder of Northern Trust, and Ronald L. Glass of GlassRatner.

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

9.      The removed personal representative submitted the names of her two sisters, Marianne Nestor and Nannette Nestor, who are named as alternate personal representatives in the decedent's will.

10.     The court did not receive resumes of the successor personal representatives suggested by the removed personal representative.  The April 30, 2015 order provided that, unless well known in the community for fiduciary accomplishments, resumes were due "as soon as possible," and the appointment of a successor fiduciary is an emergency matter.

11.     Formal notice is normally required to the "person apparently entitled to letters, if any," however, "[i]f it is likely that the decedent's property will be wasted . . ., and the appointment of a curator would be delayed by giving notice," the court has authority to appoint a curator without formal notice. See Fla. Prob. R. 5.122(c).

12.     The removed personal representative indicates in the May 21, 2015 Motion for Rehearing and Request for Immediate Interim Relief, paragraphs one and two, that since the entry of the court's April 30th order, the Pension Benefit Guaranty Corporation has published the Court's order, and "thwarted Ms. Nestor's ability to transfer Regents Glen properties in accordance with signed agreements for sale and make decisions with respect to a judicial sale which is scheduled for June 4th."

13.     The imminent judicial sale involving assets of the estate, or at least assets available to pay the creditors of the estate, constituted a new emergency (since resolved).  The removed personal representative's failure to keep current with the estate's obligations was another reason for the appointment of a curator as an independent successor fiduciary, needed to protect and preserve the estate.

14.     The curator shall act promptly as a fiduciary for all the creditors and beneficiaries, including the removed personal representative.

Page 4 of 7

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

15.     The court reserves jurisdiction to appoint a successor personal representative, or curator, if Philip von Kahle is no longer available.

16.     A curator is required and appointed to perform pursuant to Florida Probate Rule 5.122, if necessary, the following acts:

1.  Marshall all of the assets of the decedent. All persons in the possession or control of any of the decedent's property, assets or records, are hereby directed to forthwith deliver such property, estate and records to the curator;

2.  File an inventory with the court within thirty days;

3.  Have income tax returns prepared and filed for the estate and trusts as necessary;

4.  Protect assets in the best interest of the estate;

5.  Collect any over payments of estate or income taxes and request extensions, if necessary, and obtain tax releases from the Internal Revenue Service and the State of Florida for the estate;

6.  To substitute as appropriate in pending litigation and to institute and defend all lawsuits and to hire such counsel to represent the curator and the estate in such matters;

7.  The curator is authorized to perform any duty or function which a successor personal representative is authorized by law to perform;

8.  Perform such other matters as this court, upon proper notice and approval or consent of the interested persons if needed, directs for the administration of this estate until such time as Letters of Administration can be granted;

9.  Philip J. von Kahle of Michael Moecker & Associates, is appointed curator of the estate with full authority to perform the acts listed above; and shall in all respects do and perform all the duties as are by law and order of this court required.

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

THEREFORE, it is ORDERED AND ADJUDGED as follows:

1.      Philip J. von Kahle, is appointed curator of the above estate with full authority to perform the
above-listed acts; and that upon designating a resident agent, and taking an oath, Letters of Curatorship
in the estate will be granted to Philip J. von Kahle.

2.      The curator shall post a bond in an amount to be determined, or shall place all liquid assets in a
depository designated by this court. The depository is a frozen account, in which no funds can be
withdrawn without an order of this court. § 69.031, Fla. Stat. (2014). If the curator does not post a
bond:

   a.   The curator shall file receipt of assets by the restricted depositor[ies] within thirty (30) days
        of issuance of letters.

   b.   In the event Florida real estate is sold, the net proceeds of sale shall be deposited into the
        court ordered depository pursuant to Florida Statute 69.031.

   c.   All monies payable to the estate shall be paid jointly to the curator and the depository
        designated by this court  pursuant to Florida Statute 69.031.

   d.   There will be no sale of assets without special order of this court.

DONE AND ORDERED in chambers, Miami-Dade County, Florida this $\mathcal{G}$ day of JUNE, 2015.

JUDGE CELESTE HARDEE MUIR
OVERTOWN VILLAGE NORTH
701 N.W. 1ST COURT
8TH FLOOR
MIAMI, FLORIDA 33136
305/349-7105

JUDGE CELESTE HARDEE MUIR

CC:

CASE NO. 02-595-CP-02/DIV. 04, 02-1027-CP-02/DIV. 04,
02-1369-GD-02/DIV. 04, 02-2058-CP-02/DIV. 04,
02-3301-CP-02/DIV. 04 & 02-3701-CP-02/DIV.04

PHILIP J. VON KAHLE, CHIEF OPERATING OFFICER OF MICHAEL MOECKER & ASSOC., 3613 N. 29 AVENUE, HOLLYWOOD, FLORIDA 33020/954-252-1560
JOHN H. SCHULTE, FOR THE RESPONDENT, 4000 PONCE DE LEON BLVD., STE. 470, CORAL GABLES, FL. 33146
JOHN LUKACS, FOR THE RESPONDENT, 2525 PONCE DE LEON BLVD., CORAL GABLES, FL. 33134
SCOTT W. LEEDS, 657 SOUTH DRIVE, STE. 304, MIAMI SPRINGS, FL. 33166
EDWARD I. GOLDEN, 17345 S. DIXIE HIGHWAY, PALMETTO BAY, FL. 33157
CANDIS TRUSTY, TWO DATRAN CENTER, 9130 S. DADELAND BLVD., STE. 1225, MIAMI, FL. 33156
ANDREW B. CLUBOK & JENNIFER LEVY, 601 LEXINGTON AVE., NEW YORK, N.Y. 10022
NORMAN A. FLEISCHER, 2101 NW CORPORATE BLVD., STE. 107, BOCA RATON, FL. 33431
MARTY STEINBERG, BILZIN SUMBERG, 1450 BRICKELL AVE., STE. 2300, MIAMI, FL. 33131
JOSHUA D. LERNER, 80 S.W. 8 ST., #3000, MIAMI, FL. 33130
JONATHAN FEUERMAN, 1 S.E. AVE., STE. 2950, MIAMI, FL. 33131
ROBERT BARRAR, 6619 S. DIXIE HIGHWAY, STE. 311, MIAMI, FL. 33143
ALSCHULER GROSSMAN STEIN & KAHN, 1629 26 ST., SANTA MONICA, CA. 90404
MELODY LANE WARD, 4867 PEDLEY AVE., NORCO, CA. 92860
TRACY WARD, 4867 PEDLEY AVE., NORCO, CA. 92860
ROBIN KING, 525 OKEECHOBEE BLVD., STE. 1600, WEST PALM BEACH, FL. 33401
DENNIS KLEIN, HUGHES HUBBARD, P.A., 201 S. BISCAYNE BLVD., STE. 2500, MIAMI, FL. 33131